1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   EDWARD M. SALAZAR,

11            Plaintiff,                      No. CIV S-10-1033 MCE EFB PS

12       vs.

13   GARY LOCKE, United States
     Secretary of Commerce,
14
              Defendant.                  FINDINGS AND RECOMMENDATIONS
15   _____/

16           This action, filed pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"),

17   proceeds before the undersigned in accordance with Eastern District of California Local Rule

18   302(c)(21) and 28 U.S.C. § 636(b)(1).  Defendant moves for summary judgment.  Dckt. No. 26.

19   For the reasons stated herein, the court recommends that defendant's motion be granted.

20   I.      BACKGROUND

21           Plaintiff initiated this action on April 28, 2010 against Gary Locke, the United States

22   Secretary of Commerce, alleging that the United States Census Bureau retaliated against him, in

23   violation of Title VII, because he engaged in Equal Employment Opportunity ("EEO") activity.

24   Compl., Dckt. No. 1.  In October 2010, the court granted defendant's motion to dismiss

25   plaintiff's complaint with leave to amend based on plaintiff's failure to comply with Rule 8,

26   noting that "although plaintiff's complaint makes it clear that he is alleging a retaliation claim

                                              1

under Title VII, the complaint consists of a lengthy narrative and does not separate out specific factual allegations in a manner that would permit defendant to respond to those allegations." Dckt. No. 16 at 2.

On October 28, 2010, plaintiff filed an amended complaint against Locke. First Am. Compl. ("FAC"), Dckt. No. 17. Specifically, plaintiff alleges the Census Bureau retaliated against him for his prior EEO activity by: (1) not selecting plaintiff for a Partnership and Data Specialist position for which he had applied; (2) not permitting plaintiff to apply for the Assistant Manager for Quality Assurance and Partnership and Data Specialist positions, which were only open to current Stockton Local Census Office employees; (3) not calling plaintiff back to work in August 2007; and (4) not selecting plaintiff for a Partnership Specialist position for which he had applied. *Id.* at 2-8.

Defendant answered the complaint, Dckt. No. 19, and now moves for summary judgment on plaintiff's claims. Def.'s Mot. Summ. J. ("MSJ"), Dckt. No. 26. Plaintiff opposes the motion. Pl.'s Opp'n to MSJ ("Opp'n"), Dckt. No. 27.

II.     PLAINTIFF'S CENSUS BUREAU EMPLOYMENT HISTORY

A.      Plaintiff's Early Employment with the Census Bureau

Plaintiff originally worked for the Census Bureau in 1980, from October 1988 to September 1990, and then from January 1997 through July 1999.[1] Pl.'s May 5, 2011 Dep. ("Dep."), Def.'s Ex. A, at 13:13-14:24. As a result of that service, in 1998 and 1999, plaintiff filed numerous formal EEO complaints against the Census Bureau. *Id.* at 47:13-15; *see also* Decl. of Cynthia R. Shipley ("Shipley Decl."), ¶ 3; Pl.'s Resp. SUF ¶ 60. Plaintiff filed a

////

---

[1] Every decade the Census Bureau conducts a census that enumerates each individual living in the United States. Decl. of Jan R. McStay ("McStay Decl."), ¶ 1; Pl.'s Resp. to Def.'s Undisputed Facts ("Pl.'s Resp. SUF"), Dckt. No. 27 at 12, ¶ 1. Employees hired by the Census Bureau for the Decennial Census are temporary, excepted service, Schedule A appointments, subject to termination when the operation for which they were hired is completed. McStay Decl. ¶ 6; Pl.'s Resp. SUF ¶ 3.

judicial action based on his 1998 and 1999 EEO claims in September 2002.[2]  Dep. at 53:14-21;

Def.'s Ex. W; Pl.'s Resp. SUF ¶ 62.  In April 2004, the district court granted summary judgment

for defendant, which was affirmed by the Ninth Circuit in April 2006.  Def.'s Exs. X, Y; Pl.'s

Resp. SUF ¶¶ 63-64.  It is undisputed that the Census Bureau, and specifically, Janet McStay, the

Area Manager for the 2008 Census Bureau Dress Rehearsal in San Joaquin County, were aware

of plaintiff's 1998-99 EEO activity at all relevant times.  Def.'s Resp. to Pl.'s Req. for

Admission 1, Pl.'s Ex. 1.

B.      Plaintiff's Application for and Non-Selection as a Partnership and Data Specialist

Plaintiff contends that on April 27, 2006, McStay called plaintiff on behalf of Dorothy

Ballard, the Assistant Regional Director, with information on Census Bureau positions.  Dep. at

36:4-8; Opp'n at 2; *see also* McStay Decl. ¶ 2; Pl.'s Disputed Facts ("Pl.'s DF"), Dckt. No. 27 at

2, ¶ 1.  Plaintiff contends that during the phone call on April 27, 2006, McStay "brought up"

plaintiff's prior EEO cases and said that because of plaintiff's EEO cases, plaintiff "could not be

hired unless it was on the agreement . . . ."  Dep. at 36:8-13; Pl.'s DF ¶¶ 1-3.  McStay does not

dispute that she gave plaintiff information about available positions and the application process

during the April 27 phone call and directed plaintiff to check a website known as QuickHire for

more information and job updates.  Opp'n at 2; McStay Supp. Decl., Dckt. No. 29-2, ¶ 3.

However, McStay does dispute plaintiff's contention that she brought up plaintiff's EEO activity

and that she stated that his hiring would depend on "the agreement."  McStay Supp. Decl. ¶ 3.

McStay contends that the information she provided to plaintiff was "the same information [she]

would give to any applicant during a lengthy discussion of qualifications, eligibility, and

---

[2] Defendant requests that the court take judicial notice of the files in the 2002 action.
MSJ at 8, n.3.  That request is granted.  Judicial notice may be taken of "adjudicative facts" (e.g.,
court records, pleadings, etc.) and other facts not subject to reasonable dispute and either
"generally known" in the community or "capable of accurate and ready determination by resort
to courses whose accuracy cannot be reasonably questioned."  Fed. R. Evid. 201(b).  A court
may also take judicial notice of court records.  *See MCIC Indem. Co. v. Weisman*, 803 F.2d 500,
505 (9th Cir. 1986); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

1   suitability." *Id.*  She also contends that she did not "attempt to intimidate or discourage

2   [plaintiff] from applying" and "never said that his prior EEO cases would prevent him from

3   applying or from being considered." *Id.*

4          On or about November 27, 2006, the Census Bureau issued a recruiting bulletin for the

5   position of Partnership and Data Specialist, and on December 7, 2006, plaintiff submitted his

6   application for the position.  McStay Decl. ¶¶ 7, 10; *see also* McStay Exs. A, B; Pl.'s Resp. SUF

7   ¶¶ 18, 19.  On December 13, 2006, McStay conducted telephonic interviews with plaintiff and

8   another candidate, Irenemaree Castillo.  McStay Decl. ¶¶ 11, 12; Pl.'s Resp. SUF ¶ 22.  McStay

9   selected Castillo for the position.  McStay Decl. ¶ 12; Dep. at 41:17-19; Pl.'s Resp. SUF ¶ 23.

10  Plaintiff contends that he was more qualified than Castillo and that McStay selected Castillo

11  instead of plaintiff in retaliation for plaintiff's 1998-99 EEO activity.  Dep. at 46:11-47:25,

12  50:23-51:19, 113:7-16; Pl.'s DF ¶¶ 4-16.  McStay contends that she selected Castillo because she

13  was more qualified for the position than plaintiff "due to the breadth and depth of her knowledge

14  and experience working with local officials and community groups, and her extensive experience

15  in managing program goals and objectives in both the private and public sector."  McStay Decl.

16  ¶ 12; *see also* McStay Ex. D.  McStay avers that plaintiff "was not selected for the position

17  because he did not demonstrate the understanding of local issues and community groups that Ms.

18  Castillo did."  *Id.* ¶ 12.  According to McStay, plaintiff's "work experience consisted of a series

19  of 13 relatively short-term positions over a ten-year period," while Castillo "had a distinguished

20  work record in planning and implementing programs and partnerships with a wide variety of

21  community, national and international groups."  *Id.*

22         On February 7, 2007, plaintiff filed EEO Complaint No. 07-63-00035D ("0035D Claim")

23  alleging that the decision not to select plaintiff for the position was in retaliation for his previous

24  EEO activity.  Def.'s Ex. F; Pl.'s Resp. SUF ¶ 25.  Plaintiff's claim was investigated from March

25  to June 2007, and in June 2008, an EEOC administrative judge issued a decision adverse to

26  plaintiff.  Def.'s Exs. G, H, I; Pl.'s Resp. SUF ¶¶ 26-28.  In July 2008, the Department of

Commerce adopted the administrative judge's decision, which plaintiff appealed to the Office of

Federal Operations ("OFO").  Def.'s Ex. J, at 1; Pl.'s Resp. SUF ¶ 29.  The OFO affirmed the

Department of Commerce's decision in February 2010.  Def.'s Ex. J, at 1; Pl.'s Resp. SUF ¶ 30.

McStay was aware of plaintiff's 0035D Claim.  *See* Pl.'s Ex. 6 (McStay affidavit submitted in

connection with the 0035D Claim); Def.'s Ex. I at 12 (referencing McStay's affidavit in

connection with the 0035D Claim).

     C.     <u>Plaintiff's Inability to Apply for Two Stockton Positions and Plaintiff Not Being</u>
<u>Called Back to Work in August 2007</u>

On or about July 16, 2007, the Census Bureau issued a recruiting bulletin for the position

of Assistant Manager for Quality Assurance, seeking applicants who were "current Stockton

[Local Census Office] employees."  Dep. at 62:4-63:12; McStay Decl. ¶ 13; *see also* McStay

Decl. Ex. E; Pl.'s Resp. SUF ¶ 31.  On or about July 24, 2007, plaintiff was told by the Census

Bureau that only those currently employed with the Agency could apply for the Assistant

Manager for Quality Assurance position.  Dep. at 62:2-13; Pl.'s Resp. SUF ¶ 33.  Then, on or

about August 3, 2007, the Census Bureau issued a recruiting bulletin for the position of

Partnership and Data Services Specialist, again seeking applicants who were "current Stockton

[Local Census Office] employees."  Dep. at 56:10-15; McStay Decl. ¶ 14; *see also* McStay Decl.

Ex. F; Pl.'s Resp. SUF ¶ 34.  On or about August 14, 2007, plaintiff was told by the Census

Bureau that only those currently employed by the Agency could apply for the Partnership and

Data Services Specialist position.  Dep. at 55:2-17; Pl.'s Resp. SUF ¶ 36.

Plaintiff also claims that in August 2007 others were called back to work for the Census

Bureau who had less experience and lower scores than he did.  Dep. at 66:18-22; Pl.'s Resp.

SUF ¶ 37.  However, plaintiff does not remember who told him this and he cannot identify

specific individuals who were called back.  Dep. at 66:23-67:20; Pl.'s Resp. SUF ¶ 37.

Plaintiff argues that his inability to apply for the two positions and the fact that he was

not called back to work when other, less-qualified employees were amounted to retaliation

1   because Census Bureau management knew he "was available to work for the census bureau"

2   during the relevant times, and "they manipulated and circumvented the whole recruitment, hiring

3   and selection process" to ensure that plaintiff was not hired for the position.  Opp'n at 28; Dep.

4   at 58:19-59:6.  Plaintiff contends that he was "blacklisted" because of his prior EEO activity and

5   that he was bypassed for numerous positions.  Dep. at 68:21-25; Pl.'s DF ¶ 27.  However,

6   plaintiff does not dispute that he was not a Stockton employee during the recruitment periods for

7   both the Assistant Manager for Quality Assurance and Partnership and Data Services Specialist

8   positions.  Dep. at 58:6-18, 63:13-19.

9        McStay contends that she decided to post the Assistant Manager for Quality Assurance

10  and Partnership and Data Services Specialist positions internally because of guidance she

11  received from Census Bureau headquarters.  McStay Decl. ¶ 15.  She contends she relied on a

12  policy that provided that if enough qualified internal candidates were anticipated, the Census

13  Bureau could post the vacancies internally.  *Id.*; *see also* McStay Exs. G, H.  According to

14  McStay, she posted the positions internally because at least nine internal candidates potentially

15  qualified for the Assistant Manager for Quality Assurance position and at least three internal

16  candidates potentially qualified for the Partnership and Data Services Specialist position.

17  McStay Decl. ¶ 15.  She avers that "[r]etaliation played no role whatsoever in [her] decision

18  process." *Id.*

19       With regard to plaintiff's complaint that he was not called back into work in August

20  2007, McStay contends that the Census Bureau recalled staff using computer-generated

21  certification lists through its DAPPS automated system.  *Id.* ¶ 16.  Local Census Office selection

22  clerks selected staff from the computer-generated lists and followed a specific procedure for

23  doing so.  *Id.* ¶¶ 16-18.

24       On September 21, 2007, plaintiff filed EEO Complaint No. 07-63-00214D ("0214D

25  Claim") alleging that defendant did not allow him to apply for the July and August 2007 Census

26  Bureau positions and did not call him back to work in August 2007 as discrimination and

retaliation for his prior EEO activity.  Def.'s Ex. K; Pl.'s Resp. SUF ¶ 40.  Plaintiff's claim was investigated, and in July 2009 an EEOC administrative judge issued a decision adverse to plaintiff.  Def.'s Exs. M, N, O; Pl.'s Resp. SUF ¶¶ 41-43.  In August 2009, the Department of Commerce adopted the administrative judge's decision, which plaintiff appealed to the OFO. Def.'s Ex. P, at 1; Pl.'s Resp. SUF ¶ 44.  The OFO affirmed the Department of Commerce's decision in February 2010.  Def.'s Ex. P, at 1; Pl.'s Resp. SUF ¶ 45.

McStay was aware of plaintiff's 0214D Claim.  *See* Pl.'s Ex. 25 (affidavit of McStay stating that she was aware of plaintiff's 0214D Claim and was a responding official in that complaint); Def.'s Ex. O at 12 (referencing McStay's affidavit in connection with the 0214D Claim).

D.      Non-Selection for Partnership Specialist Position

On or about August 7, 2008, the Census Bureau issued a recruiting bulletin for the position of Partnership Specialist, and plaintiff submitted his application for the position on August 20, 2008.  Dep. at 71:1-10; McStay Decl. ¶ 19; Pl.'s Resp. SUF ¶¶ 46-47.  McStay contends there were four applicants, including plaintiff, for two available positions.  McStay Decl. ¶ 20.  On or about September 2008, McStay and Hector Maldonado, the selecting officials, selected Barbara Ferry and Joe Jimenez for the Partnership Specialist positions.  *Id.* ¶¶ 20, 21; *see also* McStay Decl. Ex. J; Dep. Ex. 18.  The candidates were ranked by their final rating scores, and Ferry, Jimenez, and plaintiff all had scores of 98.  However, both Ferry and Jimenez were eligible for a veteran's preference, making their final rating scores higher than plaintiff's. McStay Decl. ¶ 20; *see also* McStay Decl. Ex. J.

On November 13, 2008, plaintiff filed EEO Complaint No. 09-63-00004D ("00004D Claim"), alleging that his non-selection for the Partnership Specialist position was retaliatory for his earlier EEO activity.  Def.'s Ex. R; Pl.'s Resp. SUF ¶ 54.  Plaintiff's claim was investigated from December 2008 to April 2009, and in July 2009, an EEOC administrative judge issued a decision adverse to plaintiff.  Def's Exs. S, T, U; Pl.'s Resp. SUF ¶¶ 55-57.  Also in July 2009,

1   the Department of Commerce adopted the administrative judge's decision, which plaintiff

2   appealed to the OFO.  Def.'s Ex. V, at 1; Pl.'s Resp. SUF ¶ 58.  The OFO affirmed the

3   Department of Commerce's decision in January 2010.  Def.'s Ex. V, at 1; Pl.'s Resp. SUF ¶ 59.

4         E.    <u>Plaintiff's Employment as a Crew Leader Assistant</u>

5         Plaintiff was employed by the Census Bureau in a term position as a Crew Leader

6   Assistant in Stockton from April 30, 2007 through June 30, 2007, when he was terminated for

7   lack of work.  Dep. at 17:11-20:5; Dep. Exs. 2-4; Pl.'s Resp. SUF ¶¶ 4-6.  On or about January 5,

8   2009, plaintiff was again hired by the Census Bureau in a term position as an Enumerator in

9   South Sacramento, and he worked in that position until August 30, 2009, when he was again

10  terminated for lack of work.  Dep. at 21:8-26:6; Dep. Exs. 5-10; Pl.'s Resp. SUF ¶¶ 7-12.  Then,

11  on November 10, 2009, plaintiff was again hired by the Census Bureau as a Clerk in Elk Grove;

12  on December 27, 2009, he was promoted to an Office Operations Supervisor; and on April 20,

13  2010, he was promoted to a Field Operations Supervisor.  Dep. 27:4-28:19, 31:25-32:14; Dep.

14  Exs. 11-12; Def.'s Exs. B, C; Pl.'s Resp. SUF ¶¶ 13-16.  He was terminated on April 25, 2010.

15  Dep. at 30:21-25; Def.'s Ex. C; Pl.'s Resp. SUF ¶ 17.

16  III.    <u>MOTION FOR SUMMARY JUDGMENT</u>

17        Defendant moves for summary judgment on all of plaintiff's claims, contending that

18  plaintiff cannot establish a *prima facie* case of retaliation since (1) plaintiff did not suffer any

19  adverse employment actions, (2) there is no causal link between plaintiff's protected activity and

20  the agency's actions, and (3) assuming plaintiff were able to establish a *prima facie* case of

21  retaliation, he is unable to rebut the legitimate, non-retaliatory and non-discriminatory reasons

22  for defendant's actions.  MSJ at 9-22.

23        A.    <u>Summary Judgment Standard</u>

24        Summary judgment is appropriate when it is demonstrated that there exists "no genuine

25  issue as to any  material fact and that the moving party is entitled to a judgment as a matter of

26  law."  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Summary judgment avoids unnecessary trials in cases with no genuinely disputed material facts. *See N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over material facts; e.g., issues that can only be determined through presentation of testimony at trial such as the credibility of conflicting testimony over facts that make a difference in the outcome of the case. *Celotex*, 477 U.S. at 323.

Focus on where the burden of proof lies as to the issue in question is crucial to summary judgment procedures. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the opposing party must establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To overcome summary judgment, the opposing

party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the

claim under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac.*

*Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is

such that a reasonable jury could return a verdict for the nonmoving party.  *See Wool v. Tandem*

*Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).  In this regard, "a complete failure of

proof concerning an essential element of the nonmoving party's case necessarily renders all

other facts immaterial."  *Celotex*, 477 U.S. at 323.   In attempting to establish the existence of a

factual dispute that is genuine, the opposing party may not rely upon the allegations or denials of

its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

admissible discovery material, in support of its contention that the dispute exists.  *See* Fed. R.

Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11.  It is sufficient that "the claimed factual dispute

be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

*T.W. Elec. Serv.*, 809 F.2d at 631.

Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the

proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587

(quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  The opposing

party must demonstrate with adequate evidence a genuine issue for trial, *Valandingham v.*

*Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989), and must do so with evidence upon which a

fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*, 477

U.S. at 248, 252.  If the evidence presented could not support a judgment in the opposing party's

favor, there is no genuine issue.  *Id.*; *Celotex*, 477 U.S. at 323.

In resolving a summary judgment motion, the court examines the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

Civ. P. 56(c).  The evidence of the opposing party is to be believed.  *See Anderson*, 477 U.S. at

255.  All reasonable inferences that may be drawn from the facts placed before the court must be

1    drawn in favor of the opposing party.  *See Matsushita*, 475 U.S. at 587.  Nevertheless, inferences

2    are not drawn out of the air, and it is the opposing party's obligation to produce a factual

3    predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F.

4    Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

5    demonstrate a genuine issue, the opposing party "must do more than simply show that there is

6    some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could

7    not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

8    trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

9        B.    Analysis

10       Title VII, 42 U.S.C. §§ 2000e *et seq*., forbids employment discrimination based on race,

11   color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1); *Brown v. Gen. Servs. Admin.*,

12   425 U.S. 820, 825, 829, 834-35 (1976).  An employee may show violations of Title VII by

13   proving disparate treatment, a hostile work environment, or retaliation for protected activities.

14   To establish a *prima facie* case of retaliation, plaintiff must establish that "(1) he engaged in

15   protected activity, (2) he suffered an adverse personnel action, and (3) there was a causal link

16   between the two."  *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988); *Yartzoff*, 809 F.2d at

17   1375.  If plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a

18   legitimate, non-retaliatory reason for its decision.  *Manatt v. Bank of Am., N.A.*, 339 F.3d 792,

19   800 (9th Cir. 2003).

20       Once an employer does so, the plaintiff then bears the burden of proving, contrary to the

21   reason articulated, the true motivation for the action was retaliatory.  This can be done by

22   showing that the explanation the employer provided was merely a pretext for a retaliatory

23   motive.  *Id*.; *Costa v. Desert Palace, Inc*., 299 F.3d 838, 856 (9th Cir. 2002) (en banc) (citing

24   *Price Waterhouse v. Hopkins*, 490 U.S. 228, 260 (1989)).  A plaintiff can demonstrate pretext by

25   "directly persuading the court that a discriminatory reason more likely motivated the employer[,]

26   or indirectly by showing that the employer's proffered explanation is unworthy of credence."

1   *Stegall v. Citadel Broad. Co.* 350 F.3d 1061, 1066 (9th Cir. 2003) (quoting *Texas Dep't of Cmty.*

2   *Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (citation omitted)).  "'Direct evidence is evidence

3   which, if believed, proves the fact [of discriminatory or retaliatory animus] without inference or

4   presumption.'"  *Godwin v. Hunt Wesson, Inc*., 150 F.3d at 1221 (quoting *Davis v. Chevron,*

5   *U.S.A., Inc*., 14 F.3d 1082, 1085 (5th Cir. 1994)).  "When the plaintiff offers direct evidence of

6   discriminatory motive, a triable issue as to the actual motivation of the employer is created even

7   if the evidence is not substantial."  *Id.*  In contrast, when direct evidence is unavailable, and the

8   plaintiff proffers only circumstantial evidence that the employer's motives were different from

9   its stated motives, plaintiff must show "specific" and "substantial" evidence of pretext to survive

10  summary judgment.  *Id*. at 1222.

11       However, the plaintiff's burden at this step is somewhat different in a "mixed motive"

12  case.  In a case involving not one, but mixed motives, meaning that "there is no one 'true' motive

13  behind the decision" and "[i]nstead, the decision is a result of multiple factors, at least one of

14  which is legitimate," *Costa*, 299 F.3d at 856, "it does not make sense to ask if the employer's

15  stated reason for terminating an employee is a pretext for retaliation, when the employer has

16  offered more than one reason for the action that it took."  *Stegall*, 350 F.3d at 1067.  Therefore,

17  in mixed motive cases, plaintiff must show, by a preponderance of the evidence (either direct or

18  circumstantial), that the discriminatory reason or protected characteristic was "a motivating

19  factor" in the employment decision.  *Id.*; *Costa*, 299 F.3d at 857 ("The employee's ultimate

20  burden of proof in all cases remains the same: to show by a preponderance of the evidence that

21  the challenged employment decision was 'because of' discrimination [or, in this case,

22  retaliation].").  "Once that is done, the employer may escape liability only by proving by way of

23  an affirmative defense that the employment decision would have been the same even if the

24  characteristic had played no role."  *Sischo-Nownejad v. Merced Community College Dist.*, 934

25  F.2d 1104, 1110 (9th Cir. 1991).

26  ////

1                       1.      Protected Activity

2          Plaintiff contends that he was retaliated against for engaging in protected EEO activity.

3   Defendant "does not dispute that plaintiff engaged in protected activity, to wit, his 1998 and

4   1999 EEO claims that preceded his underlying 0035D, 0214D, and 0004D EEO claims."  MSJ at

5   10.  Defendant also does not dispute that plaintiff filed the 0035D, 0214D, and 0004D EEO

6   claims.   Protected activity not only includes the filing of an EEO complaint, but participation in

7   the investigation and EEOC hearings.  *See Yartzoff*, 809 F.2d at 1376; *see also Miller v.*

8   *Fairchild Indus.*, 885 F.2d 498, 505 (9th Cir. 1989).  Therefore, plaintiff's prior and continuing

9   EEO activity is protected and the first element of his claim is met.

10                       2.      Adverse Employment Action(s)

11          Plaintiff also contends that, as a result of engaging in EEO activity, the Census Bureau

12  retaliated against him in four ways:  first, by not selecting him for a Partnership and Data

13  Specialist position for which he had applied; second, by not permitting him to apply for the

14  Assistant Manager for Quality Assurance and Partnership and Data Specialist positions, which

15  were only open to current Stockton Local Census Office employees (and manipulating the hiring

16  system in order to preclude plaintiff from applying for those positions); third, by not calling

17  plaintiff back to work in August 2007 (and deliberately bypassing plaintiff for numerous

18  available positions); and fourth, by not selecting him for a Partnership Specialist position for

19  which he had applied.  FAC at 2-8.  Plaintiff argues that each of those actions amounts to an

20  adverse employment action.  Opp'n at 27-28.

21          Defendant does not dispute that the first and fourth actions identified by plaintiff amount

22  to adverse employment actions.  MSJ at 10.  However, defendant contends that the second and

23  third actions identified by plaintiff do not amount to adverse employment actions within the

24  meaning of Title VII.  *Id.*  Specifically, defendant argues that the Assistant Manager for Quality

25  Assurance and Partnership and Data Specialist positions were only open to current Stockton

26  Local Census Office employees and plaintiff simply did not qualify for those positions.  Thus,

1    defendant argues, plaintiff's ineligibility for the jobs, and the Census Bureau not calling him

2    back to work, cannot constitute materially adverse actions.  *Id.* at 10-11.  Defendant also argues

3    that those events would not deter a reasonable employee from making EEO complaints in the

4    future, and that the events have not deterred plaintiff, given that plaintiff has filed nine

5    administrative complaints and two judicial actions asserting EEO claims after the events

6    complained of had occurred.  *Id.* at 11.

7           An adverse employment action is one that "materially affect[s] the compensation, terms,

8    conditions, or privileges of the [plaintiff's] employment."  *Chuang v. Univ. of Cal. Davis, Bd. of*

9    *Trustees,* 225 F.3d 1115, 1125 (9th Cir. 2000).  An action is material when it is serious enough

10   to "dissuade[] a reasonable worker from making or supporting a charge of [retaliation]."

11   *Burlington N. and Santa Fe Ry. Co. v. White ("Burlington")*, 548 U.S. 53, 68 (2006).  Adverse

12   employment actions typically include hiring, firing, failing to promote, and other actions that

13   affect compensation and benefits.  *See Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th

14   Cir. 1998).

15          Here, although it presents a close question, the conduct at issue – the Census Bureau not

16   allowing plaintiff to apply for the Assistant Manager for Quality Assurance and Partnership and

17   Data Specialist positions (by manipulating the hiring system) and not calling plaintiff back into

18   work in August 2007 (and deliberately bypassing him for available positions) – amount to

19   adverse employment actions.  Taken in the light most favorable to plaintiff, such actions by the

20   Census Bureau--at least based on the record as it exists for this motion--could dissuade a

21   reasonable worker from participation in a protected activity.  *See Burlington,* 548 U.S. at 67-68.

22   Typically when the materiality of an employment action is at issue it is because the action

23   resulted in a "petty slight," a "minor annoyance," or a "simple lack of good manners," none of

24   which can characterize the employment actions at issue here.  *See id.* at 68.  Regardless of how

25   the employment actions are framed, the effect of those actions was that plaintiff was not allowed

26   to apply for the Census Bureau positions and was not called back to work, thereby directly

1   affecting his potential compensation.[3]  An employment action that results in the inability of the

2   plaintiff to work is serious enough to "dissuade[] a reasonable worker from making or supporting

3   a charge of [retaliation]," assuming the effect on the plaintiff was caused by the plaintiff's

4   protected activity.  *Id.* at 67-68.  Therefore, plaintiff has sufficiently established that each of the

5   actions by the Census Bureau that he contends are retaliatory amount to materially adverse

6   employment actions.  Accordingly, the second element of plaintiff's Title VII action is also

7   satisfied.

8           3.    Causation

9                 a.    Prima Facie Case

10          Plaintiff must show that there was a causal link between the protected activity and the

11  adverse employment action(s) he suffered.  *Jordan*, 847 F.2d at 1376.  To do so, he "must make

12  some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that

13  the plaintiff had engaged in protected activity."  *Raad v. Fairbanks N. Star Borough Sch. Dist.*,

14  323 F.3d 1185, 1197 (9th Cir. 2003).  Causation "may be inferred from circumstantial evidence,

15  such as the employer's knowledge that the plaintiff engaged in protected activities and the

16  proximity in time between the protected action and the allegedly retaliatory employment

17  decision."  *Yartzoff*, 809 F.2d at 1376 (sufficient evidence existed where adverse actions

18  occurred less than three months after complaint filed, two weeks after charge first investigated,

19  and less than two months after investigation ended); *see also Miller v. Fairchild Indus.*, 885 F.2d

20  498, 505 (9th Cir. 1989) (prima facie case of causation was established when discharges

21  occurred forty-two and fifty-nine days after EEOC hearings).  However, timing alone will not

22

23          [3] The court, as it must, has liberally construed plaintiff's complaint.  *See Haines v.
24  Kerner*, 404 U.S. 519, 520-21 (1972).  The precise nature of plaintiff's second and third adverse
    employment actions is not entirely clear in his first amended complaint (nor in his opposition to
25  the motion for summary judgment).  This has made it difficult for defendant to address those
    claims in its motion for summary judgment (and in its reply brief).  However, the undersigned
26  recommends granting defendant's motion for summary and therefore defendant is not prejudiced
    by its inability to respond to the adverse employment actions as framed herein.

show causation in all cases; rather, "in order to support an inference of retaliatory motive, the termination must have occurred 'fairly soon after the employee's protected expression.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (quoting *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009-10 (7th Cir. 2000)) (holding that an 18-month period between engagement in protected activity and an adverse action was too long, by itself, to support an inference of retaliatory causation); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (without other circumstantial evidence temporal proximity must be "very close" to establish causation); *Filipovic v. K and R Express Sys., Inc.*, 176 F.3d 390, 398-99 (7th Cir. 1999) (four months too long); *Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998) (eight months too long).

Plaintiff contends that the four alleged personnel actions were taken against him in retaliation for his having engaged in protected EEO activity.  However, his first amended complaint does not make clear what specific protected EEO activity allegedly triggered or motivated each adverse employment action.  The complaint alleges generally that defendant retaliated against him for his EEO activity and that there was "a pattern of ongoing retaliation." FAC at 1:17, 1:24.  The amended complaint also alleges that plaintiff was retaliated against for his "prior and current EEO activity."  *Id.* at 6:16-17.  In his deposition, plaintiff stated that his non-selection for the Partnership and Data Specialist position (the first adverse employment action at issue) and his inability to apply for the Assistant Manager for Quality Assurance and Partnership and Data Specialist positions (the second adverse employment action at issue), were in retaliation for his 1998-99 EEO activity.  Dep. at 46:11-47:25; 60:25-61:22.  Plaintiff also stated that his not being called back to work in August 2007 (the third adverse employment action at issue) was in retaliation for his 1998-99 EEO activity, as well as for his 0035D Claim. *Id.* at 69:1-7.  Finally, he stated that his non-selection for the Partnership Specialist position (the fourth adverse employment action at issue) was in retaliation for his 0035D and 0214D Claims. *Id.* at 81:10-20.  However, in his amended complaint and throughout his deposition, plaintiff

refers to retaliation based generally on his prior *and* current EEO activity.  Therefore, the court will assume that for each of the adverse employment actions at issue, plaintiff contends that all prior and current EEO activity as of that time contributed to the retaliation against him.

Causation "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff*, 809 F.2d at 1376.  Whether such an inference can be reasonably drawn here raises the question of whether McStay knew of plaintiff's EEO activity at the time of each adverse employment action at issue. It also raises the question of the proximity in time of those actions to the EEO activities.  With regard to McStay's knowledge, plaintiff has shown that the Census Bureau, and specifically McStay, knew of plaintiff's 1998-99 protected activity, which is the alleged basis (or at least some of the basis) for plaintiff's first, second, and third adverse employment actions.  Def.'s Resp. to Pl.'s Req. for Admission 1, Pl.'s Ex. 1.  Additionally, McStay knew about plaintiff's 0035D and 0214D Claims, which are the basis for plaintiff's fourth adverse employment action (and part of the basis for plaintiff's third adverse employment action), since she submitted affidavits in connection with each of those claims.  *See* Pl.'s Ex. 6 (McStay affidavit submitted in connection with the 0035D Claim); Def.'s Ex. I at 12 (referencing McStay's affidavit in connection with the 0035D Claim); Pl.'s Ex. 25 (affidavit of McStay stating that she was aware of plaintiff's 0214D Claim and was a responding official in that claim); Def.'s Ex. O at 12 (referencing McStay's affidavit in connection with the 0214D Claim).

With regard to timing, plaintiff's 0035D Claim activity was ongoing at the time plaintiff was not permitted to apply for the Assistant Manager for Quality Assurance and Partnership and Data Specialist positions (the second adverse employment action), and when plaintiff was not called back into work in August 2007 (the third adverse employment action).  Also, at the time plaintiff was not hired for the Partnership Specialist position (the fourth adverse employment action), plaintiff was appealing the decision on his 0035D Claim and his 0214D Claim was being

1    investigated.  Therefore, causation for those three adverse employment actions could be

2    reasonably inferred by a jury, and if so, the burden would shift to defendant to show legitimate,

3    non-retaliatory reasons for those adverse employment actions.

4           The first adverse employment action – plaintiff's December 2006 non-selection for the

5    Partnership and Data Specialist position – occurred several years after plaintiff's 1998-99 EEO

6    filings and several years after plaintiff filed his judicial action.  *See* Shipley Decl. ¶ 3.  However,

7    it occurred eight months after the Ninth Circuit issued a final decision in that action.  *See* Def.'s

8    Exs. X, Y; Pl.'s Resp. SUF ¶¶ 63-64.  Thus, there is some element of proximity.  Moreover,

9    plaintiff offers more than simply the circumstance of timing as to this action.  He also claims that

10   statements made by McStay while speaking about future employment with the Census Bureau

11   show that the adverse employment actions were the result of his 1998-99 EEO activity.

12   Specifically, he asserts that McStay called plaintiff in April 2006 with information on Census

13   Bureau positions, and that during the phone call, McStay "brought up" plaintiff's prior EEO

14   cases and said that because of plaintiff's EEO cases, plaintiff "could not be hired unless it was on

15   the agreement."  Dep. at 36:4-15.  Although disputed, when read in the light most favorable to

16   plaintiff, those alleged statements and McStay's awareness of plaintiff's 1998-99 EEO activity

17   and the judicial action that followed allow for an inference of causation sufficient to shift the

18   burden to defendant to show a legitimate, non-retaliatory reason for that adverse employment

19   action.  *See Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2nd Cir. 1995) (level of circumstantial

20   evidence in support of causation to allow an inference of causation for the *McDonnell Douglas*

21   method is de minimis at the summary judgment stage); *see also St. Mary's Honor Center v.*

22   *Hicks*, 509 U.S. 502, 506 (1993).

23                       b.       Employer's Legitimate, Non-Retaliatory Reasons

24           Because plaintiff has established a *prima facie* case of retaliation sufficient at the

25   summary judgment stage, the burden shifts to defendant to articulate legitimate, non-retaliatory

26   reasons for its decisions.  *Manatt*, 339 F.3d at 800.  The reasons do not need to be objectively

1  true, just honestly believed by the defendant.  *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733

2  (9th Cir. 2001).  Here, defendant has explained that plaintiff was not selected for the Partnership

3  and Data Specialist position for which he had applied (the first adverse employment action at

4  issue) because the other candidate, Castillo, was more qualified for the position than plaintiff

5  "due to the breadth and depth of her knowledge and experience working with local officials and

6  community groups, and her extensive experience in managing program goals and objectives in

7  both the private and public sector."  McStay Decl. ¶ 12; *see also* McStay Ex. D.  McStay avers

8  that plaintiff "was not selected for the position because he did not demonstrate the understanding

9  of local issues and community groups that Ms. Castillo did."  *Id.* ¶ 12.  According to McStay,

10  plaintiff's "work experience consisted of a series of 13 relatively short-term positions over a

11  ten-year period," while Castillo "had a distinguished work record in planning and implementing

12  programs and partnerships with a wide variety of community, national and international groups."

13  *Id.*  These are legitimate, non-retaliatory reasons for the choice.

14       Defendant also contends that the Bureau did not permit plaintiff to apply for the Assistant

15  Manager for Quality Assurance and Partnership and Data Specialist positions (the second

16  adverse employment action at issue) because the positions were only open to "current Stockton

17  [Local Census Office] employees."  Dep. at 56:10-15; McStay Decl. ¶ 14; *see also* McStay Decl.

18  Ex. F.  Plaintiff does not dispute that he was not a Stockton employee during the recruitment

19  periods for both the Assistant Manager for Quality Assurance and Partnership and Data Services

20  Specialist positions.  Dep. at 58:6-18, 63:13-19.  Additionally, although plaintiff argues that

21  defendant "manipulated and circumvented the whole recruitment, hiring and selection process"

22  to ensure that plaintiff was not hired for the positions, *see* Opp'n at 28 and Dep. at 58:19-59:6,

23  McStay provides legitimate, non-retaliatory reasons for only opening the positions at issue to

24  Stockton employees.  Specifically, McStay explains that she decided to post the Assistant

25  Manager for Quality Assurance and Partnership and Data Services Specialist positions internally

26  because of guidance she received from Census Bureau headquarters.  McStay Decl. ¶ 15.  She

states that she relied on a policy that if enough qualified internal candidates were anticipated, the Census Bureau could post the vacancies internally.  *Id.*; *see also* McStay Exs. G, H.  According to McStay, she posted the positions internally because at least nine internal candidates potentially qualified for the Assistant Manager for Quality Assurance position and at least three internal candidates potentially qualified for the Partnership and Data Services Specialist position. McStay Decl. ¶ 15.  She avers that "[r]etaliation played no role whatsoever in [her] decision process." *Id.*

 Defendant also offers a legitimate, non-retaliatory reason for not calling plaintiff back to work in August 2007 (the third adverse employment action at issue).  McStay contends that the Census Bureau recalled staff using computer-generated certification lists through its DAPPS automated system, and that local Census Office selection clerks selected staff from the computer-generated lists and followed a specific procedure for doing so.  *Id.* ¶¶ 16-18.

Finally, defendant offers a legitimate, non-retaliatory reason for the decision not to select plaintiff for the Partnership Specialist position (the fourth adverse employment action at issue). The four applicants for the position, including plaintiff, were ranked by their final rating scores, and because two of the other candidates were eligible for a veteran's preference, their final rating scores were higher than plaintiff's.  Therefore, they were selected for the position.  *Id.* ¶ 20; McStay Decl. Ex. J; Dep. 18.

The Census Bureau has identified legitimate, non-retaliatory reasons for each of the employment decisions at issue; therefore, the burden shifts back to plaintiff to prove by a preponderance of the evidence (either direct or circumstantial) that (1) the reasons are merely a pretext for a retaliatory motive, or (2) plaintiff's prior EEO activity was "a motivating factor" in the employment decision(s).

c. Pretext (Single Motive) and Motivating Factor (Mixed Motive)

As explained above, plaintiff can demonstrate pretext by "directly persuading the court that a discriminatory [or retaliatory] reason more likely motivated the employer[,] or indirectly

by showing that the employer's proffered explanation is unworthy of credence." *Stegall,* 350

F.3d at 1066. Additionally, even if plaintiff fails to establish pretext, a triable issue could still be

created if plaintiff can show, by a preponderance of the evidence (either direct or circumstantial),

that the retaliatory reason or protected characteristic was "a motivating factor" in the

employment decision. *Id.* at 1067. If he does so, defendant can only escape liability by proving

that the employment decisions "would have been the same even if the characteristic had played

no role." *Sischo-Nownejad*, 934 F.2d at 1110.

      Although it appears from plaintiff's opposition that he seeks a mixed motive analysis,

apparently to bypass defendant's legitimate non-retaliatory reasons, such a bypass would not

relieve plaintiff of providing either direct evidence or specific and substantial circumstantial

evidence of retaliation at the summary judgment stage. *See Kotewa v. Living Independence*

*Network Corp.*, 2007 WL 433544, at *7 (D. Idaho Feb. 2, 2007); *see also Stegall,* 350 F.3d at

1066. Plaintiff is only entitled to a trial on his Title VII claim if the record reveals "a triable

issue as to whether the adverse employment action was influenced by improper motives."

*Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1041 (9th Cir. 2005). Only after

hearing all the evidence does the court need to determine whether a mixed motive and/or a

pretext instruction will be given to the jury. *See Kotewa,* 2007 WL 433544 *7; *see also Stegall,*

350 F.3d at 1066 (typically a mixed-motive analysis will be more appropriate after a trial and as

a jury instruction). As explained below, neither direct or circumstantial evidence creates a

triable issue regarding defendant's motives.

## I. Direct Evidence

      If plaintiff can provide direct evidence of the Census Bureau's retaliatory motive(s), "a

triable issue as to the actual motivation of the employer is created even if the evidence is not

substantial." *Godwin*, 150 F.3d at 1221. Plaintiff claims that McStay's statement in the April

2006 telephone call that because of plaintiff's EEO cases, plaintiff "could not be hired unless it

was on the agreement," and the fact that McStay "brought up" plaintiff's EEO conduct during

that call, constitute direct evidence of McStay's retaliatory animus for each of the adverse

employment actions at issue.[4]  Dep. at 36:4-15.  Defendant counters that the statements are

disputed, but for summary judgment purposes even if McStay made the statements they do not

bear directly on the contested employment decisions.  Defendant notes the facial ambiguity of

the alleged statements and the fact that plaintiff was hired and promoted by the Census Bureau

after the statements were allegedly made.  MSJ 17:13-18:5.

McStay's alleged statements do not amount to direct evidence of causation for any of the

adverse employment actions since they do not "prove[] the fact [of retaliatory animus] without

inference or presumption."  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d at 1221.  This is not to say

that the statements cannot serve as circumstantial evidence.  But they cannot, by themselves,

serve as direct evidence of retaliation.  In addition to the ambiguity of the statements, even when

construing their alleged content in plaintiff's favor, there is nothing in the statements that

directly expresses animosity or retaliatory intent toward plaintiff.  Although plaintiff contends

that McStay's alleged statements imply retaliation (i.e., that she would not hire him because of

his prior EEO activity), the statements can only constitute *direct* evidence of pretext where the

statements show discriminatory or retaliatory animus and are closely related to the employment

action.  *See Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 772 (11th Cir. 1982) (direct

evidence of causation was established when hiring school board explained they wanted to

increase their "white presence" both before and after the employment action); *see also Price*

*Waterhouse*, 490 U.S. at 236 (sufficient evidence existed where partner said he would not

---

[4] Although plaintiff does not cite to this evidence as either direct or circumstantial
evidence in support of his claims, the Partnership and Data Specialist selection certificate
contains a handwritten note under the selectee's comments section that reads, "No EEO
Activity."  The plaintiff's comments section includes a handwritten "Yes", apparently indicating
that plaintiff had previous EEO activity.  *See* Pl.'s Ex. 8; McStay Decl. Ex. C.  Plaintiff admitted
in his deposition that he does not know who added the handwritten notes or when they were
written.  Dep. at 42:8-16.  Whatever might be gleaned from those notes, they cannot serve as
direct evidence of retaliation since they are not authenticated and there is no indication as to
when the notes were written or by whom.  *See Godwin*, 150 F.3d at 1221 (direct evidence is
evidence where retaliatory animus can be established without inference or presumption).

consider any women seriously for the position along with other discriminatory comments);

*Thompkins v. Morris Brown Coll.*, 752 F.2d 558, 563 (11th Cir. 1985) (sufficient evidence where

college president told plaintiff that there was no reason for a woman to have a second job); *Ross*

*v. Douglas Cnty.*, 234 F. 3d 391 (8th Cir. 200) (statement that plaintiff was a "black radical"

sufficient for direct evidence of causation).  McStay's statements neither clearly show

discriminatory or retaliatory animus nor that the animus caused the employment action; rather,

they are dependent upon an unknown "agreement" and are both equivocal and confused.

Ambiguous and stray remarks, even when made by a decisionmaker, may constitute

circumstantial evidence, but they do not amount to direct evidence of causation.  *Nesbit v.*

*Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993).  Therefore, assuming plaintiff's version of the

conversation is true, McStay's statements are too vague to constitute direct evidence of

discriminatory or retaliatory animus that would allow an inference of continued animus at the

time of the employment actions.

Moreover, plaintiff's contention that McStay's statements amounted to direct evidence of

retaliatory animus is undermined by the undisputed fact that McStay called plaintiff to provide

him with hiring information and told plaintiff to check the QuickHire website after making the

allegedly retaliatory statements.  Opp'n at 2; McStay Supp. Decl. ¶ 3.  And, it is further

undermined by the undisputed fact that after McStay allegedly made the statements, the Census

Bureau interviewed plaintiff for the Partnership and Data Specialist Position, hired him for a

different position, and even promoted him on two occasions.  *See* Pl.'s Resp. SUF ¶¶ 4-6, 7-16.

Accordingly, plaintiff has failed to establish direct evidence of pretext or otherwise

retaliatory motive that would be sufficient to withstand defendant's summary judgment motion.

### ii. Circumstantial Evidence

Because plaintiff has not provided direct evidence of retaliatory animus, he must show

"specific" and "substantial" evidence of pretext or otherwise retaliatory motive(s) to survive

summary judgment.  *Godwin*, 150 F.3d at 1222.  Statements made by decisionmakers can be

evidence of pretext, as can divergence from internal policy.  *Zahorik v. Cornell Univ*, 729 F.2d

85, 92 (2nd Cir. 1984).

(1) <u>Not Selected for Partnership and Data Specialist Position</u>

Defendant explains that it did not select plaintiff for the Partnership and Data Specialist

position for which he had applied because the other candidate, Castillo, was more qualified.

Plaintiff fails to provide specific and substantial evidence that defendant's reason was merely

pretext or that a retaliatory reason more likely motivated defendant.

Plaintiff asserts that he was more qualified than Castillo for the position, Pl.'s DF ¶¶ 10-

15, and argues that a showing "that a Title VII plaintiff's qualifications were clearly superior to

the qualifications of the applicant selected is a proper basis for a finding of discrimination."

*Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1492 (9th Cir. 1995) (finding that the plaintiff's

superior qualifications standing alone were enough to prove pretext).  However, plaintiff has not

made that showing here.  The recruiting bulletin for the position indicates that the person selected

for the position would be "responsible for establishing relationships and agreements with

state/local governments, and/or local business and community groups to carry out specific

activities in support of the 2008 Census Dress Rehearsal."  McStay Ex. A; Pl. Ex. 7.  Defendant

determined that Castillo's experience working with local officials, community groups, and her

success in both the public and private sector made her a more desirable candidate than plaintiff.

Construing all of plaintiff's evidence in the light most favorable to him, and drawing all

inferences in his favor, he has failed to present evidence that would create a genuine issue of

material fact regarding the legitimacy of that determination.  The reasons articulated by defendant

for its assessment of the strength of the candidates' relevant experience is consistent with and

supported by the job description provided in the recruiting bulletin and the qualifications

indicated on Castillo's resume.  Plaintiff also has not presented any evidence that would create a

genuine issue of material fact regarding whether his qualifications made him a superior candidate

for the position than Castillo.  To the contrary, the evidence presented suggests that it was

1    reasonable for defendant to determine that Castillo's qualifications better matched the job

2    description provided in the recruiting bulletin given her experience working with local officials,

3    community groups, and her success in both the public and private sector.  *See Salkovitz v. Pioneer*

4    *Electronics (USA) Inc.*, 188 Fed. App'x 90, 93-94 (3d Cir. 2006) (finding that even though the

5    plaintiff had more experience with the specific job the selectee would be performing and even

6    assisted the selectee in his new position for a time, and even though the decisionmaker made

7    comments about the plaintiff's age, that did not cast significant doubt on the determination that

8    the selectee was superiorly qualified in the employer's eyes); *see also Lidge-Myrtil v. Deere and*

9    *Co.*, 49 F.3d 1308, 1311 (8th Cir. 1995) (finding that merely being qualified does not rebut the

10   employer's view that another employee was better qualified).

11          Plaintiff also contends that "[t]he Selecting Official did NOT follow the policies and

12   procedures as outlined in the . . . Recruiting Bulletin" by violating the qualification procedures.

13   Pl.'s DF ¶ 9.  Specifically, plaintiff contends that although the position required "One full year of

14   specialized experience equivalent to the next lower grade 11 level in the Federal service," Castillo

15   was not qualified for the grade 12 level.  Pl.'s DF ¶¶ 4-8; Pl.'s Ex. 7 at 3.  If an employer departs

16   from the rules of law or its own regular rules or processes, then that departure can be evidence of

17   pretext.  *See Zahorik*, 729 F.2d at 92.  However, plaintiff fails to provide evidence as to how

18   defendant departed from its rules or processes.  Although plaintiff contends that Castillo did not

19   qualify for the grade 12 level by claiming Castillo did not meet one factor involved in grading, as

20   defendant notes, factors are not requirements.  Also, although plaintiff claims that Castillo's

21   failure to work one year at a grade 11 level made her unqualified for the grade 12 level position,

22   *see* Opp'n at 35, the recruiting bulletin specifically stated that candidates only needed a "year of

23   specialized experience equivalent to . . . grade 11 level in Federal service."  Plaintiff fails to

24   provide substantial and specific evidence showing that Castillo's experience was not *equivalent* to

25   the grade 11 level.  McStay Supp. Decl. ¶ 6.  Additionally, although plaintiff contends that of the

26   two staff members who served on the qualifying panel for graded positions, and who therefore

                                                         25

1   determined that Castillo was qualified, at least one of them (Sonja Jorgensen) was aware of

2   plaintiff's EEO activity.  Pl.'s DF ¶ 17.  However, other than that purported knowledge, plaintiff

3   has presented no evidence that anyone on the qualifying panel had any retaliatory or

4   discriminatory animus against plaintiff.

5        Plaintiff further argues that Castillo was selected for the position prior to plaintiff's

6   interview for the position since "[t]he Selection Certificate for this position is dated 12/12/2006

7   and signed on 12/13/2006, which is the same date Plaintiff was interviewed."  Pl.'s DF ¶ 16.

8   However, defendant provided uncontradicted evidence establishing that Castillo was not selected

9   until after McStay interviewed both her and plaintiff.  McStay Supp. Decl. ¶ 7.  The court has also

10  considered the handwritten notation on the Partnership and Data Specialist selection certificate

11  (plaintiff's Exhibit 8) that the selectee did not have prior EEO activity and plaintiff did.  Neither

12  party addresses or explains the notation.  However, even if it were properly offered and argued by

13  plaintiff as circumstantial evidence to impeach McStay's explanation, the notation does not

14  amount to substantial or specific evidence of pretext or improper motive.  Plaintiff makes no

15  allegation that McStay wrote the notation and he acknowledged in his deposition that he does not

16  know who wrote the handwritten notes or when they were written.  Dep. at 42:8-16.  He presents

17  no foundation for any inference that McStay is somehow connected to the notation.  Nor is any

18  inference that she was motivated by prior EEO activity reasonable in light of the fact that she had

19  rehired plaintiff in spite of his prior EEO activity.  *See* Pl.'s Resp. SUF ¶¶ 4-6, 7-16.

20       Finally, the court can consider plaintiff's prima facie evidence of causation in the pretext

21  analysis.  *Stegall*, 350 F.3d at 1069.  As noted above, plaintiff presented evidence that McStay

22  knew of plaintiff's 1998-99 protected activity at the time plaintiff was not selected for the

23  Partnership and Data Specialist position.  The timing of this adverse employment action in 2006

24  was several years after plaintiff's 1998-99 EEO filings and eight months after a final ruling from

25  the Ninth Circuit on plaintiff's judicial action related thereto.  Nonetheless, for purposes of the

26  *prima facie* causation analysis, the court considered it in conjunction with plaintiff's disputed

1    allegation that McStay called plaintiff in April 2006 with information on Census Bureau

2    positions, and that during the phone call, McStay "brought up" plaintiff's prior EEO cases and

3    said that because of plaintiff's EEO cases, plaintiff "could not be hired unless it was on the

4    agreement."  Dep. at 36:4-15.  While that evidence, for purposes of plaintiff's *prima facie* burden,

5    was sufficient to allow for an inference of causation and shift the burden to defendant to show a

6    legitimate, non-retaliatory reason for that adverse employment action, defendant has done so, and

7    this earlier considered evidence is not substantial nor specific enough to show that the defendant's

8    explanation is unworthy of credence.  The evidence simply fails to create a triable issue as to

9    pretext or otherwise demonstrate an improper motive, even when considered in conjunction with

10   the other evidence discussed above.  As previously noted, the alleged McStay statements are

11   ambiguous at best.  They are dependent upon an unknown "agreement," and any retaliatory

12   inference from them, assuming the statements were made, is undermined by the undisputed facts

13   that (1) McStay called plaintiff to provide him with hiring information and told plaintiff to check

14   the QuickHire website after making the allegedly retaliatory statements, and (2) after the alleged

15   statements, the Census Bureau interviewed plaintiff for the Partnership and Data Specialist

16   Position, hired him for a different position, and even promoted him on two occasions.

17          Accordingly, plaintiff has not shown "specific" and "substantial" evidence that

18   defendant's non-retaliatory reason for not selecting plaintiff for the Partnership and Data

19   Specialist position was pretextual or that defendant had an otherwise improper motive.  As a

20   result, defendant is entitled to summary judgment with regard to plaintiff's first adverse

21   employment action.

22                             (2)  Not Able to Apply for Assistant Manager for Quality
                                   Assurance and Partnership and Data Specialist Positions
23

24          Plaintiff also fails to provide specific and substantial evidence that defendant's reason for

25   not permitting plaintiff to apply for the Quality Assurance and Partnership and Data Specialist

26   was a mere pretext or was based on an improper motive.  As explained above, the positions were

open only to Stockton employees and plaintiff acknowledges that he was not a Stockton employee at either time.  Although plaintiff contends that defendant manipulated the hiring and selection process to ensure that plaintiff was not hired for the positions, he offers no evidence in support of that theory nor does he establish that McStay's explanation for why the position was made available only to Stockton employees was mere pretext.

Defendant provides evidence that the decision to post the positions internally was based on guidance McStay received from the Census Bureau's Human Resource Division located in Maryland.  McStay Decl. ¶ 15; *see also* McStay Exs. G, H.  Policy provided that if enough qualified internal candidates were anticipated, defendant could post vacancies internally.  *Id.* Plaintiff claims that since there were no internal candidates that qualified at the grade 12 level for the Partnership Specialist position and only two that qualified at the grade 12 level for the Assistant Manager for Quality Assurance position, McStay deviated from the policy.  Pl.'s DF ¶¶ 24, 25.  However, plaintiff fails to explain why only grade 12 level persons should have been considered qualified for those positions.  And, defendant has presented evidence that there were at least nine internal candidates that potentially qualified for the Quality Assurance position and at least three that potentially qualified for the Partnership Specialist position.  McStay Supp. Decl. ¶ 9.b.  Plaintiff also points to the fact that only one person applied for the Partnership Specialist position and only two applied for the Quality Assurance position as evidence to contradict McStay's statement that there were at least nine internal candidates that potentially qualified for the Quality Assurance position and at least three that potentially qualified for the Partnership Specialist position.  However, because potentially qualified internal candidates are not required to apply, plaintiff's evidence fails to contradict the evidence defendant has presented.  McStay's decision to post both jobs internally was within the Census Bureau's existing policy and was justified by her uncontested testimony that there were sufficient existing internal qualified candidates.

////

As noted above, plaintiff's prima facie evidence of causation can also be evidence of pretext or improper motives.  Here, it is undisputed that at the time that plaintiff was not permitted to apply for the Assistant Manager for Quality Assurance and Partnership and Data Specialist positions, McStay knew about plaintiff's 1998-99 EEO activity and plaintiff's 0035D claim, and plaintiff's 0035D Claim activity was ongoing.  Although causation could be inferred from this timing since the adverse employment action followed on the heels of the protected activity, timing alone is not sufficient for a showing of pretext at the summary judgment stage.  *See Hernandez v. Arizona*, 702 F. Supp.2d 1119, 1130-31 (D. Ariz. 2010) (timing alone not enough for substantial and specific evidence of pretext); *compare Kotewa v. Living Independence Network Corp.*, 2007 WL 433544 (D. Idaho Feb. 2, 2007) (close timing, when combined with a recent positive performance review sufficient to show the defendant's claim of poor performance was pretext).  Therefore, plaintiff would need additional evidence to demonstrate pretext.

Plaintiff also argues that the policy decision to hire internally was made by McStay – who had knowledge of plaintiff's EEO activity.  Pl.'s DF ¶¶ 24, 25.  However, defendant contends that the decision to hire internally was based on guidance from the Decennial Administrative Branch in Maryland.  Reply at 9:5-6; McStay Decl. Ex. G, H.  Plaintiff also fails to establish that the policy of hiring internally was created subsequent to his own protected activity, in which case an inference of pretext would be impossible.  Without evidence of who the decisionmaker was or when the adverse employment action took place, the plaintiff has failed to make provide evidence of a triable issue of fact.

Additionally, although McStay's remarks in 2006 and the handwritten notes on the Partnership and Data Specialist selection certificate are circumstantial evidence of pretext, neither amount to substantial or specific evidence that would be sufficient to create a triable issue as to the defendant's motivation, even when considered in conjunction with the evidence discussed above.  McStay's 2006 remarks were made during an informational telephone call, a year prior to the decision to hire internally, and were confused and ambiguous, even when taken in the light

29

most favorable to the plaintiff.  And, plaintiff concedes that he does not know who wrote the handwritten notes or when they were written.  Furthermore, the hiring of plaintiff by the Census Bureau in April 2007 casts significant doubt on plaintiff's limited circumstantial evidence concerning any inferred retaliatory animus.  *See* Dep. 17:11-18:10.

Accordingly, because plaintiff has not shown "specific" and "substantial" evidence that defendant's non-retaliatory motivation for posting the Partnership Specialist and Quality Assurance positions was a mere pretext or that defendant was improperly motivated, defendant is entitled to summary judgment with regard to plaintiff's second adverse employment action.

### (3)  Not Called Back to Work in August 2007

Nor has plaintiff provided specific and substantial evidence that defendant's reason for not calling plaintiff back to work in August 2007 was pretextual or motivated by retaliation.  McStay contends that the Census Bureau recalled staff using computer-generated certification lists through its DAPPS automated system, and that local Census Office selection clerks selected staff from the computer-generated lists and followed a specific procedure for doing so.  Therefore, according to defendant it was by chance that plaintiff's name was not called back.

Here, plaintiff does not dispute that the DAPPS system was used.  Pl.'s DF ¶ 27.  Because plaintiff offers no evidence to show that defendant manipulated the DAPPS system when rehiring employees, plaintiff has not shown that the "decision" not to call him back to work was retaliatory or that the explanation defendant provided was pretextual.  Therefore, defendant is entitled to summary judgment with regard to plaintiff's third adverse employment action.

### (4)  Not Selected for Partnership Specialist Position

Finally, plaintiff fails to provide specific and substantial evidence that defendant's reason for not selecting plaintiff for the Partnership Specialist position was pretextual or motivated by retaliatory animus.  As defendant explains, the decision to hire Barbara Ferry and Joe Jimenez over the plaintiff for the Partnership Specialist Positions was because they were eligible for a veteran's preference and therefore their final rating scores were higher than plaintiff's.

Although plaintiff claims a departure from policy, he fails to provide evidence of the departure.  Plaintiff contends that Ferry was not eligible for a veteran's preference because she did not check the Reduction in Force veteran's preference eligible box 25 on the notification of personnel action.  Pl.'s DF ¶¶ 28, 29; Pl.'s Exs. 21, 22.  However, the form provides that Ferry is veteran's preference eligible in box 23.  Pl.'s Ex. 22.  Plaintiff also contends that according to a hiring manual, "Veteran's preference does not apply when considering internal candidates" and that entitlement to veterans' preference does not guarantee a job.  Pl.'s DF ¶ 37; Pl.'s Exs. 26, 27. Therefore, plaintiff contends that Ferry should not have received a veteran's preference.  Pl.'s DF ¶ 43.  However, the Partnership Specialist position was announced under a recruiting bulletin that was open to all U.S. citizens, and because Ferry applied for the position as a U.S. citizen, she was eligible for her veteran's preference points.  McStay Supp. Decl. ¶ 12.

Plaintiff also claims that defendant departed from its regular policies by hiring Jimenez over plaintiff since Jimenez was not grade 12 level eligible.  Pl.'s DF ¶¶ 30, 38-42.  But, plaintiff again relies on an improper reading of the grade 12 level requirements.  The fact that Jimenez had not spent a year in federal service at the grade 11 level is not dispositive of whether Jimenez had spent one year at a grade 11 level *equivalent*, which is what was required for the position.  *See* McStay Suppl. Decl. ¶ 13; *see also* McStay Decl. Ex. I at 2.

When considering plaintiff's prima facie evidence of causation here as potential evidence of pretext or improper motives, the court notes that it is undisputed that at the time that plaintiff was not selected for the Partnership Specialist position, McStay, who plaintiff contends was one of the selecting officials and who plaintiff contends made the decision to only interview Ferry and Jimenez, *see* Pl.'s DF ¶ 35, knew about plaintiff's 1998-99 EEO activity, plaintiff's 0035D Claim, and plaintiff's 0214D Claim.  Additionally, at the time, plaintiff was appealing the decision on his 0035D Claim and his 0214D Claim was being investigated.  However, as noted above, although this knowledge and timing may have been sufficient to infer causation, they do not amount to substantial or specific evidence of pretext, nor do McStay's ambiguous 2006 statements or the

1   handwritten notes on the Partnership and Data Specialist selection certificate, especially when the

2   court considers that plaintiff was ultimately hired by the Census Bureau in April 2007.

3          Because plaintiff has not presented substantial and specific evidence to create a genuine

4   issue of material fact regarding whether defendant's decision to hire Ferry and/or Jimenez over

5   plaintiff was retaliatory or that the stated reasons for doing so were pretextual, defendant is

6   entitled to summary judgment on this claim.

7   IV.    <u>CONCLUSION</u>

8          In accordance with the foregoing, IT IS HEREBY RECOMMENDED that defendant's

9   motion for summary judgment be granted and the Clerk be directed to close the case.

10         These findings and recommendations are submitted to the United States District Judge

11  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen

12  days after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15  shall be served and filed within fourteen days after service of the objections.  The parties are

16  advised that failure to file objections within the specified time may waive the right to appeal the

17  District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*,

18  951 F.2d 1153, 1157 (9th Cir. 1991).

19  DATED:  March 12, 2012.

                                        EDMUND F. BRENNAN
                                        UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26